**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Patricia Fritz, | ) | Civil Action No. |
| | ) | |
| Plaintiff, | ) | Filed Electronically |
| | ) | |
| vs. | ) | |
| | ) | |
| Westmoreland County; Westmoreland | ) | |
| County Sheriff's Office; Sheriff Jonathan | ) | |
| Held, in his individual and representative | ) | |
| capacity; Charles Anderson, in his | ) | |
| individual and representative capacity; | ) | |
| Gina Cerilli, in her individual and | ) | |
| representative capacity; Ted Kopas, in his | ) | |
| individual and representative capacity; and | ) | |
| David Regoli, in his individual and | ) | |
| representative capacity, | ) | |
| | ) | |
| Defendant. | ) | JURY TRIAL DEMANDED |

## CIVIL ACTION COMPLAINT

1.     This action arises under Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. § 2000e-1, *et seq.* ("Title VII"); the Age Discrimination in Employment Act, 29 U.S.C. §

634 *et seq.;* the Equal Pay Act ("EPA"), as codified under the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 206(d); and 42 U.S.C. § 1983.

## THE PARTIES

2.     Plaintiff PATRICIA FRITZ is an adult individual with a principal residence in

Mount Pleasant, Westmoreland County, Pennsylvania.

3.     Defendant WESTMORELAND COUNTY is a county government of the third

class organized under the laws of the Commonwealth of Pennsylvania with a principal place of

1

business at 2 North Main Street, Suite 101, Greensburg, Pennsylvania, Westmoreland County, 15601.

      4.      The WESTMORELAND COUNTY SHERIFF'S OFFICE is a political division of Westmoreland County with a principal place of business at 2 North Main Street, Basement, Greensburg, Pennsylvania, Westmoreland County, 15601.

      5.      The Westmoreland County Sheriff's Office, at all times material hereto, was under the direction of Defendant Sheriff of Westmoreland County, JONATHAN HELD, pursuant to the authority granted to him under the Pennsylvania Constitution.  He is named in his individual and representative capacity.

      6.      Defendant CHARLES ANDERSON is a Westmoreland County Commissioner, appointed in 2008 and who did not run for reelection in November 2019.  He is named in his individual and representative capacity.

      7.      Defendant TED KOPAS is a Westmoreland County Commissioner, appointed in 2010 and who did not win reelection in November 2019.  He is named in his individual and representative capacity.

      8.      Defendant GINA CERILLI is a Westmoreland County Commissioner, elected in 2015 and who was reelected in November 2019.  She is named in her individual and representative capacity.

      9.      Defendant DAVID REGOLI is a Westmoreland County Assistant Solicitor to the Commissioners, appointed by the Commissioners in 2016.  He is named in his individual and representative capacity.

10.     At all times material hereto, Defendant entities acted and/or failed to act by and through their agents, servants and/or employees who at all times acted within the course and scope of their employment.

11.     At all relevant times, Defendants were acting under color of state law, and to the extent individual Defendants were not acting under color of state law, they are named in their individual capacities.

## JURISDICTION & VENUE

12.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 with respect to Plaintiff's Title VII, ADEA, Section 1983, and EPA claims.

13.     Defendants Westmoreland County and the Westmoreland County Sheriff's Office are employers subject to the provisions of Title VII, the ADEA, the EPA.

14.     Defendants Westmoreland County and the Westmoreland County Sheriff's Office are entities subject to the provisions of 42 U.S.C. § 1983, and the individuals named herein are proper parties under 42 U.S.C. § 1983.

15.     Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(2) because, at all times relevant hereto, Defendants conducted business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## ADMINISTRATIVE REMEDIES

16.     Chief Fritz satisfied the notice and procedural requirements of Title VII and the ADEA by filing a timely Charge of Discrimination with the Equal Employment Opportunity

Commission ("EEOC"), which was contemporaneously cross-filed with the Pennsylvania

Human Relations Commission ("PHRC").

17.     Pursuant to agreement between the EEOC and PHRC, it was the EEOC that

assumed investigative control of the underlying complaint.

18.     Notice of Rights letters were issued by the EEOC as to all Defendants on October

24, 2019.

19.     The action is timely brought as it is initiated within ninety (90) days of the Notice

of Rights letters.

20.     Chief Fritz has exhausted her administrative remedies as to the allegations of this

Complaint.

21.     In that Chief Fritz's charges dually-filed with the PHRC have not been with the

agency for more than one (1) year, she will seek to amend this Complaint at a later date when

that administrative process has been satisfied.


## FACTUAL BACKGROUND

22.     Chief Fritz's employment background includes 36 years of employment with the

Commonwealth including 23 years at PennDot and other agencies.

23.     In 2010, Chief Fritz retired from the Military and Veteran's Affairs having served

as an Administrative Officer and Real Property Specialist for seven (7) years.

24.     She began working part-time as a deputy in the Westmoreland County Sheriff's

office on November 6, 2010.

25.     In 2012, Jonathan Held was elected Sheriff in the County, and on May 5, 2014, he promoted Chief Fritz to the position of Chief Deputy, and she began working in a full-time capacity.

26.     Chief Fritz was the **first female** Chief Deputy in the Westmoreland County Sheriff's Department.

27.     Pursuant to 16 P.S. § 1203, the sheriff of each county shall appoint a chief deputy. It is pursuant to that section that Chief Fritz was so appointed.

28.     Section 1203 further indicates the appointment can only be revocable by the sheriff at his pleasure.

29.     Section 1203 also states, "The chief deputy, during [her] continuance in office, shall have full power and authority to perform any duty incumbent upon such sheriff, with like effect in law as if such official act had been done by the sheriff in person, regardless of the ability or temporary disability of such sheriff to act, while such sheriff continues in office."

30.     In that capacity, her key job responsibilities were managing the budget and overseeing deputies, though she did not have the authority to hire and fire deputies as that responsibility remained solely with the sheriff.

31.     When Chief Fritz assumed the role, she also worked to implement and update department policies in consultation with the department's solicitor and human resources.

32.     There was an immediate hostility evident among many of the sheriff deputies and more particularly, the deputy union president Corporal Steven Felder who said to Sheriff Held the day following Chief Fritz's promotion, "I can't believe you put a fucking woman in charge of us."

33.     Not only were the male deputies furious that an older female would supervise them, but Chief Fritz enforced existing policies and implemented important policy changes in the department to improve efficiency and preserve the budget.

34.     For example, Chief Fritz was able to reduce overtime pay in the department equating to approximately $300,000 in budget savings in her first year.

35.     The County's Human Resources department sought to have Chief Fritz implement sick leave, absenteeism, county vehicle usage, complying with federal notice requirements, and workers' compensation policies that had not been enforced for many years.  She was also tasked with implementation of new Working Rules for the Sheriff's Office.

36.     The policies additionally needed updated to reflect changes in technology and social media, the use of which was abused during working hours while employees were being paid by the taxpayers.

37.     The onset of policy changes and enforcement served to enrage an already hostile group of men who did not believe they should be subjected to directives from a woman they viewed should not be in authority.

38.     Nevertheless, Chief Fritz continued to serve as directed and drastically reduced expenses such that the budget was not only met, but the department was continuing to perform under budget.

39.     On March 6, 2017, Sheriff Held requested the County's Salary Board (consisting of the three (3) County Commissioners and the County Controller) approve an increase in pay for Chief Fritz so as to make her salary more consistent with other Chief Deputies in the County including, but not limited to, the Police Chief Deputy, the Prison Chief Deputy, and the three (3)

Chiefs of Staff for the Commissioners. Those positions were all held by men who were earning approximately $10,000 to $27,734.00 more per year.

40.     In seeking the increase, Sheriff Held noted the disparity in compensation and also informed the Salary Board that under Chief Fritz's leadership, the Sheriff's Office came under budget by approximately $278,000 (8 percent).

41.     The request to increase Chief Fritz's salary was denied.

42.     The following year, on January 24, 2018, Sheriff Jonathan Held recommended a pay increase of $10,000 for Chief Fritz noting that he would eliminate the position of Captain and reallocate duties to other staff including Chief Fritz.

43.     In effecting these changes, Sheriff Held noted he could save approximately $34,000 in taxpayer money. The request was again denied.

44.     Chief Fritz was subjected to sustained discrimination on the basis of sex given the performance of her department and her duties compared to her male peers.

***Threats by Assistant Solicitor David Regoli***

45.     On February 7, 2018, Defendant Regoli, at the direction of Defendant Commissioner Kopas, came unannounced to the Sheriff's office during the lunch hour indicating that he wanted to meet with Chief Fritz privately despite Sheriff Held's request to be included in the meeting.

46.     In the course of the meeting, he threatened, harassed, and intimidated Chief Fritz in an attempt to force her retirement or resignation.

47.     He accused Chief Fritz of causing the County to incur lawsuits and represented the lawsuits were filed by an attorney who was a friend of his.

48.     However, the lawsuits which Regoli referenced were not based upon any action taken by Chief Fritz but rather, employment actions taken by other individuals in the County.

49.     Further, Chief Fritz explained that the subjects of the lawsuits either never came in to be interviewed or did not submit an application to the department for review.

50.     Upon information and belief, applications were either redirected or withheld from the Sheriff's Department by individuals including, but not limited, to the County Commissioners.

51.     When Chief Fritz tried to explain this to Regoli, he became agitated and began screaming and yelling at Chief Fritz.

52.     Feeling threatened for her personal safety and because she was also ill at the time, Chief Fritz got out of her chair to exit the room, and at that time Regoli, without her consent, put his hand on her right shoulder, aggressively pushing her back into the seat saying, "I'm not done with you yet."

53.     He kept insisting that Chief Fritz resign, stating that Commissioner Kopas directed him to get rid of Chief Fritz by the end of that day.

54.     Regoli's erratic behavior lasted for approximately 20 minutes before Sheriff Held entered the room at which time Regoli stopped and Chief Fritz left.

55.     Following that exchange, Chief Fritz took approved leave pursuant to the Family Medical Leave Act as a result of the physical harm she sustained from Regoli's threats

56.     At that time, she also initiated this EEOC action.

57.     Chief Fritz also filed a complaint with the Pennsylvania Office of Disciplinary Counsel naming Regoli and e-mailed the Commissioners' Solicitor Melissa Guiddy on or about February 9, 2018 describing the circumstances of her meeting with Regoli.

58.     Later that day, following Fritz's e-mail to Guiddy, Regoli hand-delivered a letter to Sheriff Held requesting Chief Fritz's termination or suspension without pay; Sheriff Held did not agree.

59.     Nevertheless, on Monday, February 12, 2018, the County communicated to the media that Chief Fritz was suspended which was incorrect.

60.     Chief Fritz ultimately returned to work following her approved medical leave, but she continued to face ongoing hostility in the workplace.

61.     Notably, after Chief Fritz began working cooperatively with an African American Captain hired by Sheriff Held, she faced increased antagonism from the deputies and a sustained message that they were not going to follow her orders.

### August 2018 Meeting

62.     On August 7, 2018, Chief Fritz, Lieutenant Denise Appleby, warrant Deputy Robert Orbin, and union president Corporal Felder met to discuss Deputy Orbin's decision to take home a work vehicle.

63.     Deputy Orbin offered an explanation for taking the vehicle and the purpose of the meeting was resolved in short order.

64.     However, Corporal Felder indicated he wanted to use that meeting to also discuss the sick leave policy and in the course of that discussion, Chief Fritz informed Corporal Felder that doctor's excuses were necessary to comply with the policy.

65.     Corporal Felder told Chief Fritz that, despite her authority, he was going to instruct the deputies they did not have to listen to any of the guidelines.

66.     Corporal Felder, who is over 6 feet tall and outweighs Chief Fritz by more than 100 lbs. stood over her and began screaming at Chief Fritz that he did not have to take orders from her.

67.     Corporal Felder began to exit the room when Chief Fritz met him at the door and as his superior directed him to sit down to complete the discussion he had insisted occur, at which point, Corporal Felder swung open a metal door pinning Chief Fritz behind it.

68.     Upon hearing Corporal Felder yelling at Chief Fritz, Sheriff Held, who had been in a separate location, entered the room and when Corporal Felder also engaged in an inappropriate exchange with the Sheriff ultimately directed Corporal Felder to the Park Police and off County property.

69.     At the direction of Sheriff Held following continued inappropriate conduct by Corporal Felder, his weapons were removed from him, he was escorted from the building and suspended with pay.

### *Suspension & Termination*

70.     On August 10, 2018, Sheriff Held received a letter from the County Commissioners requesting Chief Fritz's suspension in light of his suspension of Corporal Felder.

71.     Sheriff Held did not communicate to Chief Fritz that she was suspended despite speaking with her that day.

72.     On Saturday, August 11, 2018, Chief Fritz called the Pennsylvania State Police to report that her county work car had been stolen.  Approximately 30 minutes later, Chief Fritz received a phone call from the police indicating that the County Commissioners had confiscated her vehicle as it was County property.

73.     Chief Fritz noted that the car was removed from her personal property without her knowledge or consent and that there were personal effects (including medication that she needed) in the vehicle that did not belong to the County in addition to her work uniforms.  She was advised she could not pick up her items until Monday morning at the earliest.

74.     That same day, Chief Fritz also spoke with Sheriff Held who indicated only that Corporal Felder had filed a complaint against Chief Fritz, but details of the allegations were not provided.  He indicated the Commissioners wanted to suspend Chief Fritz and that he was awaiting additional information from their solicitor Lee Demosky.

75.     On Sunday, August 12, 2018, Chief Fritz contacted Sheriff Held to ascertain her employment status.  Held indicated that Chief Fritz should take a vacation or sick day on Monday.  Again, Sheriff Held did not communicate Chief Fritz was suspended and did not elaborate on Corporal Felder's allegations.

76.     On Monday, August 13, 2018, Chief Fritz learned via news reports that she was suspended from the County.

77.     That same week, Chief Fritz received a letter from the Commissioners indicating that she was not permitted to be on any Westmoreland County premises pending an investigation into the allegations by Corporal Felder.

78.     Notably, this denial of permission on County premises had never been implemented as to other individuals facing more substantial allegations, and the substance of Corporal Felder's allegation was, as Chief Fritz eventually learned, that she poked him during the meeting on August 7, 2018.

79.     Thereafter, both Corporal Felder and Chief Fritz filed criminal complaints alleging harassment as to the other.  The County investigated only Corporal Felder's complaint.

80.     Chief Fritz received another letter from the County dated August 31, 2018 indicating that it had received "a number of complaints concerning possible physical violence on [her] part."  To date, no other incidents have been detailed other than the exchange on August 7 with Corporal Felder.  The County has offered no evidence of other complaints nor does the letter detail any other complaints.

81.     The letter also indicates Chief Fritz acted with "conduct unbecoming of any County employee, let alone a management employee, in front of members of the general public" yet never describes what that conduct was that occurred in front of the "general public" in that it only references a private meeting with County personnel.

82.     Chief Fritz remained on suspension into October 2018 when Sheriff Held and Solicitor Demosky met with Human Resources and attorney Gretchen Love to discuss Chief Fritz's employment status.

83.     While attorney Love continued to press for Chief Fritz's termination, Sheriff Held refused.  Demosky also conveyed that the Commissioners made it clear that they want Chief Fritz in jail and will do whatever it takes to see that agenda through.

84.     The County Human Resources Department mailed a letter to Chief Fritz dated October 22, 2018 advising that it scheduled a Loudermill hearing for October 25, 2018, three (3) days later and only generally identifying "the County had an investigation ongoing into the allegation made against you."

85.     Chief Fritz is not subject to Loudermill proceedings.  Her appointment is by statutory authority of the Sheriff, 16 P.S. § 1203, and the County was so notified prior to October 25, 2018.

86.     Upon inquiry, the Solicitor to the Sheriff represented that Sheriff Held did not conduct an investigation and was not involved in the matter referenced in the October 22, 2018 letter.

87.     Then, in a letter dated, October 25, 2018, Westmoreland County notified Chief Fritz that her employment was terminated and for the first time represented that "Sheriff Held has delegated his Section 1620 rights to the County Commissioners for purposes of your employment due to a conflict of interest arising from the fact that Sheriff Held is a material witness to the August 7, 2018 incident."

88.     That termination letter was not received by Chief Fritz until the following week despite being released to the media and public on October 25, 2018.

89.     The County Commissioners throughout that time were the subject of an EEOC complaint filed by Chief Fritz more than eight (8) months earlier and were themselves subject to a conflict of interest.

90.     On October 25 and/or 26, 2018, Sheriff Held filed with the Office of the Prothonotary of Westmoreland County a Revocation of Deputation of Chief Deputy Sheriff Fritz in which he averred that he performed  the "ministerial act" of filing the notice based upon an investigation conducted by the County who "concluded that Chief Patricia Fritz must be terminated."

### Criminal Charges are Unfounded

91.     Chief Fritz's employment was terminated while the criminal charges, which served as the basis of her discharge, remained pending.

92.     The criminal charges lacked merit, and Chief Fritz was exonerated by the Westmoreland County Court of Common Pleas finding her not guilty of harassment.

### *Harm to Chief Fritz*

93.     As a consequence of the hostility toward women in positions of authority in the workplace, Chief Fritz's employment was terminated while male employees were treated more favorably in the terms and conditions of their employment.

94.     As a consequence of the inequitable treatment, Chief Fritz was subjected to a public reprimand concerning her employment with the County which has no basis in fact and is further evidenced by the discriminatory animus of those individuals fueling the narrative.

95.     The effects of termination have been devastating to Chief Fritz.

96.     In addition to experiencing economic lost in the form of wages and benefits, she also sustained general compensatory harm including, but not limited to, mental anguish, pain, suffering, inconvenience, and humiliation.

97.     Chief Fritz has sought reinstatement to her former position to no avail.

## COUNT I

## SEX DISCRIMINATION (TITLE VII)

### Plaintiff v. Westmoreland County, Westmoreland County Sheriff's Office

98.     The above paragraphs are incorporated as though each paragraph were set forth fully herein.

99.     Defendants Westmoreland County and the Westmoreland County Sheriff's Office, acting through their agents, servants, administrators, and employees, discriminated

against Chief Fritz on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-1, *et seq.*

100.    The animus toward a female Chief Deputy that existed at the time of Chief Fritz's promotion became more pronounced and divisive as her employment continued.

101.    What became abundantly clear was that Chief Fritz was treated differently in the terms and conditions of her employment than other men in the County.

102.    The County asserts Chief Fritz was terminated for violating County policy in her exchange with Corporal Felder in that her poking him in the chest, an allegation she denies, constitutes a violation of County rules.

103.    Those County rules, however, have not been applied equitably as men within the County were given more favorable treatment in the terms and conditions of their employment when faced with much more severe and substantial allegations.

104.    Corporal Felder, in particular, had a history of mistreating women in the workplace in violation of the County's harassment policy yet his employment was never terminated, and he was not considered "dangerous" for purposes of being excluded from County property.

105.    On information and belief, Defendants engaged in a practice of stifling complaints by women alleging discrimination, harassment and/or unequal treatment in the workplace.

106.    Further, Chief Fritz filed a criminal complaint against Corporal Felder arising out of the same August 7 exchange alleging assault with intent to cause bodily injury.  The County investigated only Corporal Felder's complaint; it did not investigate Chief Fritz's complaint.

107.    Other male County employees who were also more favorably treated in the terms and conditions of their employment include, but are not limited to:

a.  A male Deputy was given an opportunity to resign and use his sick and vacation time after he was charged with sexting a 15-year-old female (a felony offense) and providing her and another minor friend alcohol.

b.  A male Deputy tested positive for cocaine while engaging in work activity and while using a county vehicle.  He was not terminated and was permitted to resign/retire from employment.

c.  A male Deputy engaged in inappropriate behavior with female prisoners and was only moved to a different facility but was not terminated or otherwise disciplined.

d.  The prior Chief Deputy was permitted to use his sick, personal, and vacation time prior to his resignation/retirement.

e.  When a County Commissioner alleged that the County Controller was involved in a public disturbance by shoving him on County premises (in a courthouse hallway), neither were terminated from employment nor precluded from County property out of a safety concern (and notably, both Commissioner Anderson and Commissioner Kopas were in office at that point).

f.  A male warrant Deputy tested positive while on duty at 8:00 a.m.  He drove a county vehicle to receive drug and alcohol testing where his test revealed he was legally drunk, and his employment was not terminated.

g.  A male Deputy was suspended for only 2.5 days after a female County employee provided allegations of sexual harassment.

      h.   A male deputy used a sick day on a Friday and attended a golf outing after which he was cited with Driving Under the Influence, and he was not discharged from employment.

108.    Unlike the male employees, Chief Fritz was not permitted to use sick, personal, or vacation time she had accrued, nor was she afforded an opportunity to retire, a last chance agreement, counseling, or any other opportunities provided to male employees.

109.    Chief Fritz was not given the opportunity to resign or retire in lieu of termination nor was she reinstated after criminal proceedings lacked merit resulting in a finding of not guilty.

110.    And more specifically, the man who was the subject of the same incident which brought about Chief Fritz's discharge was suspended with pay and suffered no adverse employment consequences and was not similarly banned from all Westmoreland County premises.

111.    In fact, Corporal Felder was promoted to Sergeant, received a new shift, a work vehicle, and a better position on the warrant team.

112.    Defendants' conduct as set forth constitutes reckless or an intentional and willful violation of Title VII.

113.    As a direct and proximate result of Defendants' unlawful conduct, Chief Fritz was deprived of her job and has lost income in the form of wages, benefits, and future job opportunities.

114.    As a direct and proximate result of Defendant's unlawful conduct, Chief Fritz has suffered physical harm, pain, suffering, inconvenience, mental anguish and loss of enjoyment of life.

115.    In addition to actual damages including loss of wages and benefits incident to employment, the effects of the conduct of Defendants includes, but is not limited to, that Chief Fritz was unlawfully discharged from her employment, that she suffered humiliation and embarrassment among her colleagues and peers, and that she was retaliated against in ways which undermine her professional career and impact her employment opportunities.

WHEREFORE, for the foregoing reasons, Plaintiff PATRICIA FRITZ requests the Court grant the relief prayed for hereinafter.

## COUNT II

### RETALIATION (TITLE VII)

### Plaintiff v. Westmoreland County, Westmoreland County Sheriff's Office

116.    The above paragraphs are incorporated as though each paragraph were set forth fully herein.

117.    Chief Fritz's conduct is protected under Title VII's anti-retaliation provision which seeks to protect individuals who oppose employment practices prohibited by the statute. 42 U.S.C. § 2000e-1, *et seq.*

118.    Chief Fritz opposed discrimination on the basis of sex in the workplace and engaged in protected conduct by filing an EEOC complaint as well as a complaint with the County Solicitor.

119.    The conduct of filing complaints is within the purview of protected conduct under the anti-retaliation provisions of Title VII.

120.    Further, Chief Fritz (via her supervisor) engaged in protected activity by addressing the disparity in pay with her male peers.

121.    After engaging in protected conduct, Chief Fritz faced an increase of hostility and inequitable treatment in the terms and conditions of her employment.

122.    Chief Fritz was treated differently in how she was compensated in her position as well as how discipline was applied to her as opposed to individuals who had not engaged in protected conduct.

123.    As a consequence of engaging in protected activity, Chief Fritz was subjected to retaliatory behavior by Defendants including, but not limited to, discipline and termination which were not actions taken against similarly-situated individuals.

124.    What followed Chief Fritz's complaints was a pattern of conduct taken by Defendants with respect to the terms and conditions of Chief Fritz's employment that would deter an objectively reasonable employee from seeking legal recourse; it creates a chilling effect on protected activity.

125.    With respect to employment with the County, Chief Fritz was subjected to termination when other male employees were given either no discipline, paid leave, or the option to resign for similar or more severe conduct.

126.    As a result of Defendants' conduct, Chief Fritz has been subjected to a pattern of retaliation directed at forcing her termination, depriving her of professional opportunities, causing her emotional distress, mental anguish, inconvenience, humiliation, and loss of enjoyment of life.

127.    As a direct and proximate result of Defendants' unlawful conduct, Chief Fritz was deprived of her job and has lost income in the form of wages, benefits, and future job opportunities.

128.    As a direct and proximate result of Defendant's unlawful conduct, Chief Fritz has suffered physical harm, pain, suffering, inconvenience, mental anguish and loss of enjoyment of life.

129.    In addition to actual damages including loss of wages and benefits incident to employment, the effects of the conduct of Defendants includes, but is not limited to, that Chief Fritz was unlawfully discharged from her employment, that she suffered humiliation and embarrassment among her colleagues and peers, and that she was retaliated against in ways which undermine her professional career and impact her employment opportunities.

WHEREFORE, for the foregoing reasons, Plaintiff PATRICIA FRITZ requests the Court grant the relief prayed for hereinafter.

## COUNT III

### AGE DISCRIMINATION (ADEA)

**Plaintiff v. Westmoreland County, Westmoreland County Sheriff's Office**

130.    The above paragraphs are incorporated as though each paragraph were set forth fully herein.

131.    Defendants, acting through their agents, servants, administrators, and employees, discriminated against Chief Fritz on the basis of age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 634 *et seq.*

132.    Chief Fritz was 63 at the time of her termination.

133.    Her position of Chief Deputy was filled by Denise Appleby (age 51), a former Lieutenant with limited experience and less than one (1) year in that role.

134.    Defendants' treatment of Chief Fritz also resulted from an animus toward older females that was not similarly directed to older males.

135.    Defendants' conduct as set forth constitutes reckless or an intentional and willful violation of the ADEA.

136.    As a direct and proximate result of Defendants' unlawful conduct, Chief Fritz was deprived of her job and has lost income in the form of wages, benefits, and future job opportunities.

137.    As a direct and proximate result of Defendant's unlawful conduct, Chief Fritz has suffered physical harm, pain, suffering, inconvenience, mental anguish and loss of enjoyment of life.

138.    In addition to actual damages including loss of wages and benefits incident to employment, the effects of the conduct of Defendants includes, but is not limited to, that Chief Fritz was unlawfully discharged from her employment, that she suffered humiliation and embarrassment among her colleagues and peers, and that she was retaliated against in ways which undermine her professional career and impact her employment opportunities.

WHEREFORE, for the foregoing reasons, Plaintiff PATRICIA FRITZ requests the Court grant the relief prayed for hereinafter.

## COUNT IV

### SEX DISCRIMINATION (EPA)

**Plaintiff v. Westmoreland County, Westmoreland County Sheriff's Office**

139.    The preceding paragraphs are incorporated as though each paragraph were set forth fully herein.

140.    Defendant acted in violation of the Equal Pay Act by engaging in wage discrimination on the basis of sex for equal work requiring equal skill, effort, and responsibility, performed under similar working conditions.  29 U.S.C. § 206(d).

141.    Chief Fritz, as a deputy of the Sheriff's Office, is comparable to other Chief Deputies in the County including but not limited to, the Police Chief Deputy, the Prison Chief Deputy, and the three (3) Chiefs of Staff for the Commissioners.

142.    More specifically, the Police Chief Deputy and the Prison Chief Deputy were the positions most comparable to Sheriff Deputy in that all three (3) positions require carrying a firearm and availability 24/7 in the event of an emergency; the other Chief Deputy positions do not have those heightened requirements.

143.    The other Chief Deputy positions were held by men who were earning approximately $10,000 to $27,734 more per year.

144.    Chief Deputy functions involve the same common core of substantially similar and/or identical tasks including, but not limited to, law enforcement oversight.

145.    Chief Fritz's compensation was disproportionately maintained despite performing at equal or higher levels than the other male Chief Deputies.

146.    Defendants were on notice of Chief Fritz's disparate pay and did not equalize it, and instead continued to engage in discriminatory disparate pay up to the time of her wrongful termination.

147.    Defendants' conduct as set forth in this Complaint constitutes an intentional and willful violation of Equal Pay Act as codified by the FLSA.

148.     As a direct and proximate result of Defendants' unlawful conduct, Chief Fritz was deprived of compensation equitable to her male counterparts and is therefore entitled to back pay, attorney's fees and liquidated damages.

WHEREFORE, for the foregoing reasons, Plaintiff PATRICIA FRITZ requests the Court grant the relief prayed for hereinafter.

## COUNT V

## RETALIATION (EPA)

### Plaintiff v. Westmoreland County, Westmoreland County Sheriff's Office

149.     The preceding paragraphs are incorporated as though each paragraph were set forth fully herein.

150.     Defendant acted in violation of the Equal Pay Act, as codified under the Fair Labor Standards Act, by engaging in retaliatory action as a consequence of Plaintiff's complaints of unequal pay.  29 U.S.C. § 215(a)(3).

151.     Defendants were at all times on notice of the inequitable pay concerning Plaintiff and her male counterparts.

152.     On March 6, 2017, Sheriff Held requested the County's Salary Board (consisting of the three (3) County Commissioners and the County Controller) approve an increase in pay for Chief Fritz so as to make her salary more consistent with other Chief Deputies in the County including,  Those positions were all held by men who were earning approximately $10,000 more per year.

153.    In seeking the increase, Sheriff Held noted the disparity in compensation and also informed the Salary Board that under Chief Fritz's leadership, the Sheriff's Office came under budget by approximately $278,000 (8 percent).

154.    The request to increase Chief Fritz's salary was denied.

155.    The following year, on January 24, 2018, Sheriff Jonathan Held recommended a pay increase of $10,000 for Chief Fritz noting that he would eliminate the position of Captain and reallocate duties to other staff including Chief Fritz.

156.    In effecting these changes, Sheriff Held noted he could save approximately $34,000 in taxpayer money.  The request was again denied.

157.    Chief Fritz was subjected to sustained discrimination on the basis of sex given the performance of her department and her duties compared to her male peers.

158.    Defendants retaliated against Chief Fritz for engaging in protected activity by notifying Defendants its discriminatory actions were clearly evidencing unequal pay based upon sex.

159.    As a consequence of Chief Fritz's complaints, Defendants not only denied the equal compensation but undertook a pattern and practice aimed at compelling her discharge from employment.

160.    Chief Fritz's complaints of discrimination are protected activity within the scope of the law, and she has a legal right to voice those concerns without fear that it will adversely affect her employment.

161.    Such retaliatory conduct by Defendants is intended to deter an objectively reasonable employee from seeking legal recourse and has a chilling effect on individuals pursuing their federally protected rights.

162.    As a direct and proximate result of Defendants' unlawful conduct, Chief Fritz was deprived of compensation equitable to her male counterparts and is therefore entitled to back pay, attorney's fees and liquidated damages.

163.    As a direct and proximate result of Defendants' unlawful conduct, Chief Fritz has suffered physical harm, pain, suffering, inconvenience, mental anguish and loss of enjoyment of life.

WHEREFORE, for the foregoing reasons, Plaintiff PATRICIA FRITZ requests the Court grant the relief prayed for hereinafter.

## COUNT VI

### VIOLATION OF SECTION 1983 – SEX

### Plaintiff v. All Defendants

164.    The preceding paragraphs are incorporated as though each paragraph were set forth fully herein.

165.    Chief Fritz, a female, is a member of a protected class under discrimination laws and was discriminated against in the course of her employment because of her sex, resulting in a deprivation of her rights and equal protection under the law.

166.    Defendants undertook discriminatory acts against Chief Fritz, on account of her sex, and in the terms and conditions of her employment, committed unlawful acts in violation of 42 U.S.C. § 1983 and Chief Fritz's right to equal protection under the law under the Fourteenth Amendment of the United States Constitution.

167.    Defendants' conduct as set forth in this Complaint constitutes an intentional and willful violation of Equal Protection Clause of the United States Constitution.

168.   Defendants at all times material hereto were acting under color of state law.

169.   Chief Fritz's complaint of mistreatment was subject to the same unequal process faced by other women which served to either not properly investigate or to be dismissive of women's complaints concerning the conduct of male employees.

170.   Upon information and belief, Defendants may not have properly preserved the complaints in county files.

171.   The Commissioners and the Sheriff were afforded wide discretion to control and direct personnel matters as agents of Westmoreland County and/or the Westmoreland County Sheriff's Office, and as a result, they were able to advance their discriminatory animus and direct the adverse employment actions suffered by Chief Fritz and other women.

172.   The conduct of Defendants reflects a policy, custom, and/or pattern of official conduct which serves to treat women differently, on the basis of sex, and deprive female employees in protected classes of their rights pursuant to the Equal Protection Clause.

173.   The conduct of Defendants reflects a practice of decisionmakers treating male employees more favorably than female employees in the terms and conditions of their employment including, but not limited to, the ability to use accrued time or resign in lieu of termination and by failing to properly investigate claims by women of mistreatment by men in the workplace.

174.   As a direct and proximate result of Defendants' discrimination on the basis of sex as a deprivation of her rights under the Equal Protection Clause of the United States Constitution, Chief Fritz was discharged from employment.

175.     As a direct and proximate result of Defendants' unlawful conduct, Chief Fritz was deprived of her job and has lost income in the form of wages, benefits, and future job opportunities.

176.     As a direct and proximate result of Defendant's unlawful conduct, Chief Fritz has suffered physical harm, pain, suffering, inconvenience, mental anguish and loss of enjoyment of life.

177.     In addition to actual damages including loss of wages and benefits incident to employment, the effects of the conduct of Defendants includes, but is not limited to, that Chief Fritz was unlawfully discharged from her employment, that she suffered humiliation and embarrassment among her colleagues and peers, and that she was retaliated against in ways which undermine her professional career and impact her employment opportunities.

WHEREFORE, for the foregoing reasons, Plaintiff PATRICIA FRITZ requests the Court grant the relief prayed for hereinafter.

## COUNT VII

### VIOLATION OF SECTION 1983 – POLITICAL/FIRST AMENDMENT

### Plaintiff v. Westmoreland County, Gina Cerilli, Ted Kopas, and David Regoli

178.     The preceding paragraphs are incorporated as though each paragraph were set forth fully herein.

179.     Defendants discriminated against Chief Fritz because of her political affiliation in violation of her right to belief and association under the First and Fourteenth Amendments of the United States Constitution.

180.     Defendants conduct as set forth herein constitutes a violation of 42 U.S.C. § 1983.

181.    Defendants acted under color of state law and those actions constituted a misuse of power that is afforded to them under law incident to their positions.

182.    Chief Fritz's position does not require a political affiliation in accord with the County's commissioners and/or assistant solicitor to the commissioners for the performance of her employment functions.

183.    Defendants directed Chief Fritz's adverse employment actions including, but not limited to, termination from employment because of her political affiliation.

184.    At the time of Chief Fritz's termination, Sheriff Held was under criminal investigation and faced the possibility of removal from office which would place Chief Fritz in control of the office under Pennsylvania law.

185.    When it became clear that Chief Fritz was not involved in the activity that was the basis of the criminal investigation, it is believed that the individual Defendants named herein, who were of the political opposition, sought her removal so that she could not assume the role of Sheriff even on an interim basis.

186.    Under 16 Pa.C.S. § 1203, Sheriff Held was granted power to revoke Chief Fritz's employment at his pleasure by recording a signed revocation.

187.    Sheriff Held delegated his authority to the County Commissioners.

188.    More specifically, on October 25, 2018, Westmoreland County notified Chief Fritz that her employment was terminated and for the first time represented that "Sheriff Held has delegated his Section 1620 rights to the County Commissioners for purposes of your employment due to a conflict of interest arising from the fact that Sheriff Held is a material witness to the August 7, 2018 incident."

189.     Defendants deliberately and/or recklessly disregarded Chief Fritz's constitutional rights and deprive Chief Fritz of those rights under color of state law and in violation of the First Amendment to the United States Constitution and 42 U.S.C. § 1983.

190.     Defendants' actions violated the aforementioned laws by terminating Chief Fritz's employment in opposition of her political status.

191.     The conduct has the effect of impeding political expression and association by wielding the power to hire and fire employees based upon political affiliation and where that affiliation plays no role in the individual's employment.

192.     As a direct and proximate result of Defendants' deprivation of her rights under the First Amendment to the United States Constitution, Chief Fritz was discharged from employment.

193.     As a direct and proximate result of Defendants' unlawful conduct, Chief Fritz was deprived of her job and has lost income in the form of wages, benefits, and future job opportunities.

194.     As a direct and proximate result of Defendant's unlawful conduct, Chief Fritz has suffered physical harm, pain, suffering, inconvenience, mental anguish and loss of enjoyment of life.

195.     In addition to actual damages including loss of wages and benefits incident to employment, the effects of the conduct of Defendants includes, but is not limited to, that Chief Fritz was unlawfully discharged from her employment, that she suffered humiliation and embarrassment among her colleagues and peers, and that she was retaliated against in ways which undermine her professional career and impact her employment opportunities.

WHEREFORE, for the foregoing reasons, Plaintiff PATRICIA FRITZ requests the Court grant the relief prayed for hereinafter.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff PATRICIA FRITZ requests that the Court grant the following relief against Defendants including, but not limited to, the following:

a) Compensation for past and future lost wages;

b) Compensation for past and future lost benefits;

c) General compensatory damages including but not necessarily limited to, physical harm, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and harm to reputation;

d) Liquidated damages as appropriate;

e) Expert fees and other costs of suit;

f) Attorney's fees; and

g) Such further legal and equitable relief as this court deems just and proper.

**JURY TRIAL DEMANDED**

Respectfully submitted,
*s/Vicki Kuftic Horne*
Vicki Kuftic Horne, Esquire
P.A. I.D. No.: 36578
Nicole Daller, Esquire
P.A. I.D. No.: 312224
1380 Old Freeport Road, Ste 3A
Pittsburgh, PA 15238
Phone:  412.967.9400
Fax:  412.967.0465
E-mail: vkhorne@vkhorne.com
E-mail: ndaller@vkhorne.com
*ATTORNEYS FOR PLAINTIFF*