IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PATRICIA FRITZ,

               *Plaintiff,*

     v.

WESTMORELAND COUNTY, *et al,*

               *Defendants.*

Civil Action No. 2:19-cv-1517

Hon. William S. Stickman IV

## **MEMORANDUM OPINION**

William S. Stickman IV, United States District Judge

      Plaintiff Patricia Fritz ("Fritz") has brought claims against the Westmoreland County Sheriff's Office ("Sheriff's Office"), her former place of employment, for: Count I - sex discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981; Count II - retaliation under Title VII; Count III - age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 634 *et seq.*; Count IV - sex discrimination under the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d); Count V - retaliation under the EPA, 29 U.S.C. § 215(a)(3); and, Count VI - sex discrimination under 42 U.S.C. § 1983. Count VI is also against her former supervisor and the Sheriff at the time, Jonathan Held ("Held"). Lastly, in Count VIII, she brings a claim for sex and age discrimination and retaliation under the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* ("PHRA"). The Sheriff's Office and Held (collectively, "Defendants") filed a joint Motion for Summary Judgment. (ECF No. 87). For the reasons explained below, the Court will grant the motion.

## I. FACTUAL BACKGROUND

On November 6, 2010, Fritz was hired by Westmoreland County as a part-time deputy in the Sheriff's Office.[1]   (ECF No. 89, p. 1); (ECF No. 105, p. 2).   The Sheriff's Office is a department of a political subdivision, Westmoreland County, headed by an independently elected row officer (Held, who was elected in 2012).   (ECF No. 14, pp. 2, 6).   Fritz was in charge of the gun permit and license to carry sections.   Held, who was elected Sheriff in Westmoreland County, took office in January 2012.   From 2012 to 2014, Paul McCommons ("McCommons") served as Chief Deputy Sheriff.   McCommons resisted most of Held's proposed changes to the Sheriff's Office, and McCommons had a "if it ain't broke, don't fix it" mindset.   McCommons left the Sheriff's Office in 2014, and Fritz was appointed by Held to the position of Chief Deputy Sheriff on May 5, 2014.   During Fritz's interview, Held conveyed to her that he needed a Chief Deputy Sheriff who would be strict and enforce the rules.   Fritz's appointment was pursuant to Held's statutory authority as Sheriff under 16 P.S. § 1203, and she served at his pleasure.   Her annual salary, $41,675.87, was about the same as that of McCommons.   Fritz did not get overtime, and she was an exempt employee.   Fritz's duties and responsibilities included, amongst other things, managing the budget, implementing and updating department policies in accordance with law and county guidelines, training new deputy units, and general managerial and supervisory duties.   (ECF No. 89, pp. 1-2); (ECF No. 105, pp. 2-3, 18-21); (ECF No. 112, pp. 1-2).   Shortly after Fritz assumed her role, Corporal Steven Felder ("Felder") expressed his personal opinion regarding her appointment to Held, which was, "I can't believe you put a fucking woman in charge of us."   (ECF No. 14, p. 7); (ECF No. 105, p. 21); (ECF No. 112, p. 2).

---

[1] Fritz retired from the Military and Veteran's Affairs in 2010, having served seven years as an Administrative Officer and Real Property Specialist.   She previously held a position with PennDOT for twenty-three years.   (ECF No. 105, p. 19); (ECF No. 112, p. 1).

Throughout her tenure as Chief Deputy Sheriff, Fritz reported instances of hostility from men in the department to Held.[2] (ECF No 105, p. 21); (ECF No. 112, p. 2).

The Sheriff can facilitate compensation changes in his office by making a request to the Salary Board, which consists of three Commissioners[3] and the Controller. Believing Fritz deserved a higher salary, Held sent a March 6, 2017 letter to the Salary Board requesting a $10,000.00 raise for Fritz. (ECF No. 89, p. 3); (ECF No. 105, p. 4, 21-12); (ECF No. 112, pp. 2-3). After the request, the Sheriff meets in an executive session with the Salary Board to discuss the compensation request. Following the executive session, at a public meeting, the Sheriff must make a motion to call the compensation request to a vote. When a request for an employee of the Sheriff's Office is before the Board, the Sheriff also receives a vote, for a total of five votes. Ultimately, the Salary Board sets the salaries for employees of the Sheriff's Office, and it does so using a scale. (ECF No. 89, p. 2); (ECF No. 105, pp. 3-4, 22). Held presented his proposed salary increase for Fritz at the executive session, and he was told "it's not going to happen." (ECF No. 109-4, pp. 28-29). The Salary Board (minus Held) was of the opinion that Fritz's compensation was consistent with her pay grade, and her salary was not increased. (ECF No. 89, p. 3); (ECF No. 105, pp. 5, 23); (ECF No. 112, p. 3).

On January 24, 2018, Held submitted a second request to the Salary Board seeking to increase Fritz's compensation by $10,000.00. In addition to a raise for Fritz, Held's request included a restructuring of the Sheriff's office, elimination of the Captain position, and a raise for other employees. Held spoke with each of the Salary Board members regarding his request,

---

[2] Prior to 2018, sex discrimination lawsuits were filed against Held by women in the Sheriff's Office. (ECF No. 105, p. 35); (ECF No. 112, p. 8).

[3] At the time of the events at issue here, the Commissioners were Ted Kopas, Gina Cerilli and Charles W. Anderson (collectively referred to as "Commissioners").

and he determined that he did not have support.  Because of the lack of support, he withdrew his request prior to the executive session.  Held eventually hired a new Captain, and Fritz's salary was not increased.  (ECF No. 89,  p. 3); (ECF No. 105, pp. 5  23); (ECF No. 112, p. 3).

On February 7, 2018, Assistant Solicitor David Regoli ("Regoli") came to the Sheriff's office and requested a private meeting with Fritz.  Regoli presented Fritz with two letters, dated February 6, 2018, from an attorney representing two individuals setting forth allegations of discrimination against Fritz.  (ECF No. 89, p. 4); (ECF No. 105, pp. 7, 23) (ECF No. 112, p. 3).  According to Fritz, Regoli accused her of discrimination and threatened her employment status.  She also claimed that he physically assaulted her, and that all of his conduct was a violation of the County's Workplace Violence Policy.  Due to Fritz's allegations about Regoli's conduct, Held requested the County investigate the incident, which he classified as a complaint of workplace harassment.  The County's independent investigating attorney determined that Regoli had not engaged in misconduct.  Then, on February 8, 2018, Regoli received a third letter from the attorney setting forth similar allegations of discrimination by Fritz as those contained in the first two letters.  He launched an investigation, which was never completed.  (ECF No. 89, p. 4); (ECF No. 105, pp. 7, 24-26); (ECF No. 112, pp. 3-5).

In a February 9, 2018 letter, the Commissioners requested that Held suspend Fritz due to the discrimination complaints on the basis that the County's Non-Discrimination Policy stated that employees who allegedly conducted themselves in a discriminatory manner were to be "indefinitely suspended pending the outcome of the investigation."  Held refused to suspend Fritz.  (ECF No. 89, p. 4); (ECF No. 105, pp. 8, 26); (ECF No. 112, pp, 4-5).

That same month, Fritz requested medical leave, and approval was granted by Held and the County.  (ECF No. 89, pp. 4-5); (ECF No. 105, p. 8).  During her leave, Fritz filed a

4

complaint with the Equal Employment Opportunity Commission ("EEOC") on February 21, 2018, against the Commissioners and Regoli as well as a complaint with the Pennsylvania Office of Disciplinary Counsel against Regoli. Her complaints were based on the February 7, 2018 incident with Regoli. On February 21, 2018, she filed a complaint with PHRC against the Commissioners and Regoli. On March 3, 2018, she amended her EEOC complaint to include a claim of unequal pay based on gender discrimination.[4] (ECF No. 89, p. 5); (ECF No. 105, pp. 8, 26, 35-36); (ECF No. 112, pp. 5, 9). On March 27, 2018, the Commissioners wrote to Pennsylvania senators and requested Fritz's removal from office based on the discrimination complaints pending against her. (ECF No. 105, p. 27; ECF No. 112, p. 5). On June 6, 2018, Fritz supplemented her EEOC complaint to include claims of sex discrimination and unequal pay. (ECF No. 105, p. 36); (ECF No. 112, p. 9).

On August 7, 2018, Fritz met with Felder, Deputy Orbin ("Orbin"), and Denise Appleby ("Appleby") about Orbin taking a work vehicle home. After that issue was resolved, Corporal Felder wanted to discuss the sick leave policy with Fritz. He told Fritz that he disagreed with the policy and he was going to instruct his deputies not to listen to the guidelines. (ECF No. 89, p. 5); (ECF No. 105, pp. 9, 27); (ECF No. 112, p. 5). At some point, Felder, who was approximately six feet tall and weighed between 250 and 300 pounds, allegedly began yelling at Fritz. (ECF No. 105, p. 27); (ECF No. 112, p. 5). According to Fritz, when Felder began to exit the room, she met him at the door and demanded, as his superior, that he sit down. Felder allegedly swung open the metal door and pinned Fritz behind the door. (*Id.*). Held heard Felder

---

[4] In June, she amended her EEOC charge to include claims for sex discrimination and equal pay. In August, Fritz again amended it to include sex and age-based discrimination, and retaliation. In October, she amended and supplemented her claim to include retaliation. (ECF No. 105, p. 36); (ECF No. 112, p. 9). On April 12, 2019, Fritz filed three additional EEOC complaints. One was against the Sheriff's Office, one was against the Commissioners, and one was against the County. (ECF No. 105, p. 36); (ECF No. 112, p. 9).

yelling, and entered the room and had an exchange with Felder. The men then proceeded to the Human Resources ("HR") Office where Held turned the matter between Fritz and Felder over to HR to investigate. Held suspended Felder and directed the Park Police to take Felder's firearm and escort him off the premises. (ECF No. 89, p. 6); (ECF No. 105, pp. 12, 31); (ECF No. 112, pp. 5-6).

In the ensuing days, Felder alleged that Fritz poked him in the chest during the August 7, 2018, meeting. Fritz denied his allegations. Held was called by the Commissioners to a meeting to discuss Felder's allegations against Fritz wherein he learned that the Commissioners viewed Felder as the victim. The Commissioners stated that Fritz was going to be banned from County property for violating workplace policy. (ECF No. 105, pp. 29-30); (ECF No. 112, pp. 5-6). Held denied Felder's allegations against Fritz. (ECF No. 105, p. 30); (ECF No. 112, p. 6). After the meeting, Held received a letter from the Commissioners dated August 10, 2018, stating,

> This week the Westmoreland County Human Resources office received a number of complaints against Chief Deputy Patricia Fritz. These allegations concern possible physical violence on her part, as well as conduct unbecoming of any County employee, let alone a management employee, in front of members of the general public. Human Resources has begun an internal investigation into these accusations.
>
> The Commissioners join together in their concern over the gravity of the seriousness of these allegations and are calling upon you to indefinitely suspend Chief Deputy Patricia Fritz with pay immediately pending the outcome of the investigation. An employee suspension would require Chief Deputy Fritz not to be on County premises and to return County property, including her swipe card, vehicle, gun, uniforms and badge, etc.
>
> *     *     *
>
> In light of these policies and the allegations, the Board of Commissioners urge you to cooperate with us in our request to suspend Chief Deputy Fritz pending the outcome of the investigation. Otherwise, the County will take all appropriate steps consistent with County policies and practices to ensure that these standards are upheld and to ensure the safety of County employees and visitors while on County property.

(ECF No. 109-74).   Held, pursuant to his authority under 16 P.S. § 1203, issued an indefinite

paid suspension to Fritz on August 10, 2018.  (ECF No. 105, p. 30); (ECF No. 112, p. 6).  Also

that same day, the County's Director of Human Resources, Amanda Bernard ("Bernard"), sent

Fritz a letter stating in pertinent part:

> This week the Westmoreland County Human Resources office received a
> number of complaints concerning possible physical violence on your part, as well
> as conduct unbecoming of any County employee, let alone a management
> employee, in front of members of the general public.  Human Resources has
> begun an internal investigation into these accusations.
> Due to the gravity of the seriousness of these allegations you are not
> permitted to be on County premises or attend County functions pending the
> investigation.  You are required to return County property, including your swipe
> card, vehicle, gun, uniforms and badge, etc.  During this time, you will continue
> to be paid.

(ECF No. 109-43).  Fritz's County vehicle was confiscated by the Park Police on August 11,

2018.  (ECF No. 105, p. 30); (ECF No. 112, p. 6).  By letter dated August 13, 2018, Bernard

further instructed Fritz:

> An action form was signed by Sheriff Held, suspending you with pay,
> effective August 10, 2018.  Due to the gravity of the seriousness of these
> allegations you are not permitted to be on County premises or attend County
> functions pending the investigation.  It is my understanding that you have already
> returned your badge and swipe card (County identification) to the Sheriff and that
> the County vehicle has been obtained.  I would ask that you make arrangements to
> return any additional County property that you may have in your possession.

(ECF No. 109-44).  On August 16, 2018, Fritz amended and supplemented her EEOC complaint

to include claims of sex and age discrimination, and retaliation.  (ECF No. 105, p. 36); (ECF No.

112, p. 9).

A non-traffic citation was issued by Officer Gardner on August 22, 2018, against Fritz for

a violation of 18 Pa. C.S.A. § 2709(a)(1), harassment, for the August 7, 2018, incident with

Felder.  (ECF No. 109-65).  Fritz then filed a private criminal complaint against Felder on

August 24, 2018, alleging he assaulted and harassed her on August 7, 2018.  (ECF No. 109-27).

On August 24, 2018, Held sought to reinstate Fritz and Felder. (ECF No. 89, p. 6); (ECF No. 105, pp. 11, 30); (ECF No. 112). County approval was granted for Felder's reinstatement, but Fritz remained on suspension. On September 10, 2018, Fritz met with HR and provided her version of August 7, 2018's events. The attorney investigator hired by the County concluded her investigation on September 19, 2018, and submitted her recommendation to the County on October 1, 2018. (ECF No. 89, pp. 6-7); (ECF No. 105, pp. 12, 31); (ECF No. 112, p. 7). More specifically, she advised:

> I recommend that Fritz be invited to a Loudermill hearing to respond to concerns about her conduct. Specifically, the investigation revealed credible and corroborated evidence/testimony that Fritz blocked Felder from leaving the meeting room and that she pushed and poked him during the exchange. Fritz's conduct, provided she does not provide exculpatory information during the Loudermill hearing, should result in her termination.

> My recommendation as to Fritz is based on my understanding that Fritz is not part of a collective bargaining unit and has no "property interest" in her employment. She is an at-will employee who serves at the pleasure of Sheriff Held. I am aware, however, that Fritz has a pending EEOC claim and likely her termination will result in an additional charge or modification of her existing claims (adding a retaliation claim). To that end, there is a legitimate basis for the County to take action against Fritz (which is not retaliatory). When we met, we discussed whether there were other circumstances, that were similar in nature, but resulted in less of a disciplinary penalty. There are no similar comparable situations.

(ECF No. 109-64).

On October 2, 2018, Fritz was found guilty of summary harassment relating to the August 7, 2018 incident with Felder.[5] (ECF No. 89, p. 7); (ECF No. 105, pp. 13, 31). HR sent Held a letter dated October 15, 2018, noting that independent counsel recommended terminating Fritz, he delegated the authority on Fritz's job status to HR, and that it was the County's

---

[5] Fritz's private criminal complaint never advanced through the criminal justice system, but she appealed her conviction. On August 22, 2019, she was found not guilty. (ECF No. 105, p. 31); (ECF No. 112, p. 7).

intention to terminate Fritz.   HR requested Held sign the personnel action form terminating

Fritz's employment.  (ECF No. 109-67).  Held disagreed with the investigation's conclusions and

he refused to sign the form.  (ECF No. 89, p. 7); (ECF No. 105, pp. 13-14).

HR, by October 22, 2018 letter, notified Fritz that a Loudermill hearing was scheduled

for October 25, 2018, at which time she would "be given the opportunity to respond to the

allegations that have been made against you."   (ECF No. 109-21).   Through counsel, Fritz

responded by October 24, 2018 letter stating that she did not understand why she would be

subject to Loudermill proceedings conducted by the County since she served the Sheriff pursuant

to his statutory rights.  (ECF No. 109-22, p. 2).  Fritz went on to state:

> Chief Deputy Fritz challenges any form of adverse action by the County
> based upon a summary proceeding or the underlying facts.  She believes it to be
> clearly retaliatory and done for improper political purpose.  The conduct of the
> County is consistent with a pattern of retaliation and unlawful discrimination
> directed at Chief Deputy Fritz.
> Chief Deputy Fritz reiterates her request that the County imposed
> prohibition on her access to County property that directly interferes with her
> ability to complete the functions of Chief Deputy be removed.

(ECF No. 109-22, pp. 2-3).  Fritz did not appear for the October 25, 2018, Loudermill hearing.

By letter dated October 25, 2018, the County terminated her employment effective that day.

(ECF No. 109-23); (ECF No. 89, p. 8); (ECF No. 105, pp. 15, 32); (ECF No. 112, p. 7).   In so

doing, the County referenced the August 7, 2018, incident and its investigation, her criminal

conviction, and "allegations of racial discrimination made by several former County employees."

(ECF No. 109-23, p. 3).  The letter stated:

> We scheduled a hearing for today, October 25, 2018, to provide you with
> the opportunity to respond to the County's concerns about your employment.
> Neither you or your attorney appeared.  As you are aware, the Westmoreland
> County Human Resources office received a number of complaints concerning
> possible physical violence on your part, as well as conduct unbecoming of a
> County employee.  Human Resources immediately began an internal investigation
> into these accusations.

On August 7, 2018, it is alleged that you yelled at, pushed and poked an employee following a meeting. It is also alleged that you blocked the employee from leaving the room. It is alleged that you then yelled at and followed the employee through public areas. On August 22, 2018, you were charged with a citation for harassment. On October 2, 2018, you were found guilty of a summary harassment charge stemming from this incident.

Our investigation concluded that your behavior constituted a violation of the Westmoreland County Workplace Violence Policy and the Westmoreland County Code of Ethics. In addition, the behavior and charge of harassment is a violation of the Westmoreland County Sheriffs Policy Manual in regards to Article V, Section 2 and Section 4.

The County has a responsibility to take all reasonable steps to ensure that County security and workplace standards are upheld and to ensure the safety of County employees and visitors while on County property.

In addition to the concerns regarding the August 7, 2018 incident, the County is aware of allegations of racial discrimination made by several former County employees. These concerns relate to a pattern of racial discrimination in hiring. Today's meeting would have afforded you the opportunity to respond to these allegations.

While the County believes that you are an at-will employee, the County was willing to provide you with the opportunity to share information that you deemed to be relevant regarding these matters. You deprived yourself of this opportunity by failing to attend our meeting.

Please be advised that Sheriff Held has delegated his Section 1620 rights to the County Commissioners for purposes of your employment due to a conflict of interest arising from the fact that Sheriff Held is a material witness to the August 7, 2018 incident. Accordingly, this letter is to advise you that you are being terminated from your position effective immediately.

(ECF No. 109-23, p. 3). Held signed the Revocation of Deputation of Chief Deputy Patricia Fritz on October 26, 2018. (ECF No. 109-46).

Fritz was 63-years-old at the time of her termination. She received a payout for her unused vacation time. (ECF No. 89, p. 8); (ECF. No. 105, p. 17). Held appointed a 51-year-old woman, Denise Appleby, to the Chief Deputy Sheriff position vacated by Fritz. (ECF No. 89, p. 8); (ECF. No. 105, p. 17). In 2019, Held lost reelection. When the new Sheriff took office in

10

January 2020, Appleby's employment was terminated.  (ECF No. 89, p. 9); (ECF No. 105, p. 18).

## II. STANDARD OF REVIEW

Summary judgment is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material if it must be decided to resolve the substantive claim or defense to which the motion is directed.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And there is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  The Court must view the evidence presented in the light most favorable to the nonmoving party.  *Id.* at 255.  It refrains from making credibility determinations or weighing the evidence.  *Id.*  "[R]eal questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof" will defeat a motion for summary judgment.  *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

## III. ANALYSIS

Defendants contend that summary judgment should be entered in their favor as to all counts against them.  For the following reasons, the Court will grant summary judgment in their favor.

### A. Summary judgment will be entered in favor of the Sheriff's Office (Counts I, VI and VIII) and Held (Counts VI and VIII) as to Fritz's claims of sex discrimination.

Fritz contends that she had a statutory right to be free from sex discrimination in the terms and conditions of her employment, particularly her compensation, and in the termination

of her employment.   She brings her claims under Title VII, the PHRA, and § 1983 (the equal

protection clause).[6]

When a plaintiff brings parallel claims of employment discrimination under Title VII, the

PHRA and § 1983, those claims are governed by the *McDonnell Douglas*[7] burden-shifting

framework and, therefore, the Court will address them all together. *Jones v. Sch. Dist. of Phila.*,

198 F.3d 403, 410 (3d Cir. 1999) (explaining that the framework generally applies to claims

under Title VII and the PHRA); *Atkinson v. LaFayette College*, 460 F.3d 447, 454 n.6 (3d Cir.

2006) ("Claims under the PHRA are interpreted coextensively with Title VII claims."); *Lewis v.*

*Univ. of Pittsburgh*, 725 F.2d 910, 915 n.5 (3d Cir. 1983) (§ 1983 claims "require the same

elements of proof as a Title VII action").   To establish a *prima facie* case of sex discrimination,

a plaintiff must show (1) she is a member of a protected class, (2) she is qualified for her

position, (3) she suffered an adverse employment action, and (4) the adverse employment action

gave rise to an inference of unlawful discrimination, such as where the employer treated a

similarly situated employee who was not a member of the plaintiff's protected class more

favorably. *Jones*, 198 F.3d at 410–11.  Then, the burden shifts to the defendant "to articulate

some legitimate, nondiscriminatory reason" for the plaintiff's termination. *McDonnell Douglas*,

411 U.S. at 802.  If the defendant produces a response, the burden shifts back to the plaintiff to

show that the defendant's answer is merely a pretext for discrimination. *Id.* at 804–05.  "To

discredit the employer's proffered reason, ... the plaintiff cannot simply show that the employer's

decision was wrong or mistaken[.]" *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994).

"Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities,

---

[6] Title VII and the PHRA prohibit an employer from discriminating on the basis of race. 42
U.S.C. § 2000e-2(a)(1); 43 P.S. § 955(a). The Equal Protection Clause also proscribes sex-based
discrimination. *Keenan v. City of Phila.*, 983 F.2d 459, 465 (3d Cir. 1992).

[7] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action" that a reasonable jury could infer that the employer did not act because of the legitimate, non-discriminatory reason. *Id.* A plaintiff can defeat summary judgment by demonstrating pretext in one of two ways: 1) by "point[ing] to evidence in the record that would cause a reasonable juror to disbelieve the employer's articulated legitimate non-discriminatory reason, thereby creating a genuine dispute of material fact as to the credibility of that reason[,]" *Burton v. Teleflex Inc.*, 707 F.3d 417, 430 (3d Cir. 2013) (citing *Fuentes*, 32 F.3d at 762), or 2) "pointing to evidence that indicates that the employer acted with discriminatory animus." *Id.* at 430-31. If proceeding by the first method, a plaintiff need not provide evidence that the employer acted with animus, but rather only that the employer's rationale is "unworthy of credence[.]" *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 310 (3d Cir. 2012).

There is no dispute that Fritz, as a female, is a member of a protected class. (ECF No. 88, p. 10). Further, for purposes of their motion only, Defendants do not dispute that Plaintiff was qualified for the Chief Deputy Sheriff position. (ECF No. 88). Defendants contend that Fritz has failed to adduce evidence to prove the third and fourth elements of the test for a *prima facie* case of sex discrimination. The Court agrees.

With regard to the third element, Defendants argue that the record is devoid of any evidence that suggests that Fritz suffered an adverse employment action. They argue, "Sheriff Held made several requests to increase Plaintiff's salary and he did not agree with or consent to the termination of Plaintiff […]." (ECF No. 88, p. 11). Defendants further note that Held played no part in Fritz's termination, and he actually opposed her termination. The Court concurs with Defendants that Fritz has not met the second element of the test for a *prima facie* case of sex discrimination.

As recounted in the factual history section herein, the record is clear that Held could only make a request to increase Fritz's salary to the Salary Board. Neither he nor the Sheriff's Office had the authority to increase salaries. That power rested solely with the Salary Board. No evidence exists that Held or the Sheriff's Office had the authority to set or modify Fritz's compensation. The two times Held requested that Fritz receive a $10,000.00 raise, his request did not survive the executive session of the Salary Board as it considered her salary to be in line with the County's pay structure. Both times, Held was told his request would be rejected. It is not dispositive that Held did not make a formal motion at a public meeting to call his compensation request for Fritz to a vote. It is abundantly evident from the facts of record that it would have been rejected. Fritz has not come forward with any evidence to show that Held's repeated submission of salary increases would have been successful or that making formal motions at the public meetings would have resulted in a salary increase for Fritz. The record demonstrates that Fritz did not suffer any adverse employment action taken by Defendants with regard to her salary.

Furthermore, the record is clear that Defendants played no role in Fritz's termination. After the incident between Felder and Fritz on August 7, 2018, Held turned the matter over to HR to investigate and delegated his rights under 16 P.S. § 1620 regarding her employment status. At the direction of the County, Fritz was suspended and then terminated as Chief Deputy. Prior to Fritz's termination, Held did not participate in the investigation of the August 7, 2018 incident. He disagreed with the investigation's conclusions. The Court concurs with Defendants that the facts of record "clearly illustrate that Defendants did not condone, request, or direct the termination of Plaintiff. To be sure, Defendants vocally opposed it." (ECF No. 88, p. 12).  The

14

record demonstrates that Fritz did not suffer any adverse employment action taken by Defendants with regard to her termination.

The Court also finds that Fritz has not met the fourth element of the test for a *prima facie* case of sex discrimination. This is because, as addressed in the preceding paragraphs, Defendants were not part of any adverse employment action that gave rise to an inference of unlawful discrimination. The Court would further note that Fritz has simply not put forth plausible comparator evidence that her employment condition or termination occurred under circumstances that give rise to an inference of unlawful sex discrimination. *See Sarullo v. U.S. Postal Service*, 352 F.3d 789, 798 (3d Cir. 2003) ("The central focus of the *prima facie* case is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin.") (internal quotation marks and citation omitted).[8]

As to her salary, it was initially set at the same rate as Fritz's predecessor. Thus, there is no inference of discrimination. Nevertheless, Fritz argues that appropriate comparators are the Chiefs for the Commissions, the Prison Wardens and the Park Police Chief Deputy. Like her,

---

[8] Although the Court of Appeals for the Third Circuit has not explicitly stated what constitutes a similarly situated employee, a panel of our Circuit Court stated that it "accept[s] the standard used by other circuits that to be considered similarly situated, comparator employees must be similarly situated in all relevant respects." *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 881–82 (3d Cir. 2011) (citations omitted). The panel further stated that "[a] determination of whether employees are similarly situated takes into account factors such as the employees' job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in." *Id.* at 882 (citations omitted). This is consistent with a recent panel's statement in *Durst v. City of Philadelphia*, 798 F. App'x 710, 713 (3d Cir. 2020) that "[a]lthough 'similarly situated' does not mean identically situated, the comparator must be similar in all relevant respects." *Id.* (citing *Johnson v. Kroger Co.*, 319 F.3d 858, 867 (6th Cir. 2003)). *Durst* identified relevant factors to "include whether the comparators had the same supervisor, were subject to the same standards, and had engaged in similar conduct." *Id.* The examination of comparator evidence is a case specific fact-intensive inquiry. *Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 305 (3d Cir. 2004).

the Commissioners' Chiefs and Prison Wardens were required to be on call twenty-four hours a day, seven days a week, and the Park Police Chief Deputy was required to carry a firearm. None of these positions required a bachelor's degree, and only the Deputy Warden of Security of the prison had to have an associates degree. Their salaries ranged from $55,820.70 to $70,418.59 per year, versus Fritz's $42,684.27 salary. (ECF No. 105, p. 22). Defendants have disputed all of these factual assertions. (ECF No. 112, p. 3). Setting that dispute aside, Fritz's comparator evidence is woefully deficient. None of the other positions she references were equivalent to hers. They were in different County departments, with vastly different job responsibilities and supervisors. The Court holds that Fritz has come forth with no relevant comparator evidence giving rise to an inference of discriminatory intent. She has failed to demonstrate that other similarly situated individuals were treated any differently, regardless of sex.

As to her termination, the County, not Held or the Sheriff's Office, terminated her because (1) her behavior on August 7, 2018, violated the Workplace Violence Policy and the Code of Ethics and violated Article V, Sections 2 and 4 of the Sheriffs Policy Manual, (2) she was convicted of summary harassment, and (3) "allegations of racial discrimination made by several former County employees." (ECF No. 109-23, p. 3). Fritz argues that her termination was inconsistent with the discipline of male employees in the Sheriff's Office. A deputy, E.F., was suspended for three days after being accused of sexual harassment. Another deputy, D.G., who admitted to receiving sexual favors from inmates, was permitted to resign. A third deputy, R.N., who was facing charges of sexting with a minor, giving alcohol to minors, and engaging in sexual favors with inmates, was permitted to resign. A fourth deputy, J.D., pled guilty to DUI-general impairment, and was issued a ten-day suspension (reduced to five days), and then put on a performance improvement plan for a probationary period. A warrant deputy, A.H., tested

positive for cocaine and was permitted to resign in lieu of termination. Another deputy, B.M., who tested positive for alcohol received a suspension. Lastly, S.E., a deputy, revealed confidential information and was permitted to resign in lieu of termination. (ECF No. 105, pp. 33-34). While some of these allegations are disputed by Defendants (ECF No. 112, p. 8), the real problem with regard to these comparators is that they held different positions than Fritz. She was second-in-command of the Sheriff's Office and they were merely deputies. Also, Fritz never requested to resign or retire prior to her termination. Most importantly, she engaged in misconduct much different than the individuals she attempts to compare herself with – she was convicted of criminal conduct toward a fellow employee (a subordinate) on-site during work hours. The Court holds that Fritz has failed to demonstrate that other similarly situated individuals were treated any differently, regardless of sex. She has come forth with no relevant comparator evidence giving rise to an inference of discriminatory intent.

Fritz's bare allegations that her conditions of employment and termination were based on her sex are insufficient to withstand summary judgment; she has not set forth a *prima facie* case of sex discrimination. *See Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989) (a "plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment" and it "must amount of more than a scintilla."). No facts adduced in discovery link her salary or her termination to sex, and the Court will enter summary judgment in favor of Defendants as to Fritz's sex discrimination claims.

Even if Fritz had established a *prima facie* case of sex discrimination by Defendants, summary judgment in favor of Fritz would still be inappropriate because she has failed to meet the shifting burden under *McDonnell Douglas* of adducing evidence sufficient for a fact-finder to conclude that the employment action against her was pretextual. *McDonnell Douglas*, 411 U.S.

at 802–04.   Defendants have asserted several nondiscriminatory reasons for the adverse employment action against Fritz.   The Court finds that Fritz has failed to offer sufficient evidence that Defendants' reasoning was actually a pretext for discrimination.  Fritz's denial that she engaged in the conduct that led to her termination, is insufficient to create a genuine issue of material fact.  The issue of pretext addresses whether an employer honestly believes the reasons it offered for an employee's termination, not the correctness or desirability of its reasons.  Fritz failed to adduce evidence from which a reasonable factfinder could conclude "that the employer's proffered reasons were merely a pretext for discrimination," *Sarullo*, 352 F.3d at 797, or that there were "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions from which a reasonable juror could conclude that the Defendants' explanation is unworthy of credence, and hence infer that the employer did not act for the asserted" non-retaliatory reason, *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 262 (3d Cir. 2017) (quotation marks and citations omitted).

Fritz disbelieves the County's reasons for refusing to increase her salary and terminating her employment (ECF No. 40, pp. 17-18), but she has come forth with nothing to prove pretext. Notably, after her termination, Fritz's position was filled by Held with another woman over the age of fifty.   There is no evidence in the record before the Court that justifies disbelieving the County's articulated legitimate reasons.  *Fuentes*, 32 F.3d at 764 (3d Cir. 1994).  In other words, Fritz has presented no actual evidence to discredit the legitimate nondiscriminatory reasons for her salary and termination, and no evidence from which a fact finder could infer that Defendant's actions were motivated by discriminatory animus.

The Court holds that Defendants are entitled to summary judgment as a matter of law as to Counts I, VI and VIII.[9]

### B. Summary judgment will be entered in favor of the Sheriff's Office (Count III and VIII) and Held (Counts VIII) as to Fritz's claims of age discrimination.

In Count III of her Amended Complaint, Plaintiff alleges age discrimination relative to her termination in violation of the ADEA. In Count II, she alleges age discrimination relative to her termination in violation of the PHRA.[10] Summary judgment will be entered in favor of Defendants as to these claims.

---

[9] The Court will not delve into an analysis of the contours of Fritz's § 1983 claims against Held contained in Count VI due to the fact that Fritz has failed to adduce facts proving a deprivation of a federally protected right. However, it would note that any claim against Held in his official capacity is redundant as Fritz has brought suit against Westmoreland County. Suits against government employees in their official capacities "generally represent another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. New York Dept. of Social Services*, 436 U.S. 658, 690 n.55 (1978)). Thus, the Court would grant summary judgment in favor of Held as to Fritz's § 1983 claims against him in his official capacity.

Furthermore, in a § 1983 suit, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (1976). When faced with a motion for summary judgment, Fritz had to "produce evidence supporting each individual defendant's personal involvement in the alleged violation to bring that defendant to trial." *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 291 (3d Cir. 2018); *see also Waugaman v. City of Greensburg*, 841 F. App'x 429, 432 (3d Cir. 2021) (observing that precedent from the Third Circuit Court of Appeals requires a § 1983 plaintiff to produce evidence that supports the personal involvement of each individual defendant). Fritz has not done this. She has failed to point to any evidence in the summary judgment record that demonstrates Held's personal involvement in setting her salary or in her termination. In fact, the record demonstrates that he advocated for a salary increase and opposed her termination. On this basis, the Court would grant summary judgment in favor of Held as to Fritz's § 1983 claims against him in his individual capacity.

[10] The ADEA prohibits an employer from discharging an individual, or otherwise discriminating against an individual with respect to compensation, terms, conditions, or privileges of employment, because of that individual's age. *See* 29 U.S.C. § 623(a)(1). Similarly, the PHRA provides: "It shall be an unlawful discriminatory practice ... [f]or any employer because of the ... age ... of any individual ... to discharge from employment ... or to otherwise discriminate against such individual ... with respect to compensation, hire, tenure ... if the individual ... is the best able

In cases like this one, where Fritz does not possess direct evidence of age discrimination, the Court must apply the three-part burden-shifting framework set forth in *McDonnell Douglas*, discussed in the previous section herein. *See Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015). Under this test, Fritz has the initial burden of establishing a *prima facie* case of discrimination. *See Sarullo*, 352 F.3d at 797. Generally, to establish a *prima facie* case of age discrimination, a plaintiff must prove the following elements: (1) she is 40 years of age or older; (2) she suffered an adverse employment action; (3) she was qualified for the position at issue; and (4) she was treated less favorably than a sufficiently younger person under circumstances that give rise to an inference of age discrimination. *See Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997) (citing *Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995)).

Defendants concede for purposes of their motion that Fritz satisfied the first and third elements of the *prima facie* test in that she was 63-years-old at the time of her termination and she was qualified for her position as Chief Deputy Sheriff. (ECF No. 88, p. 15). Similar to their argument with regard to her failure to set forth a *prima facie* case of sex discrimination, Defendants argue that Fritz fails to satisfy prong two of a *prima facie* case of age discrimination because the record is devoid of any evidence to suggest that she suffered an adverse employment action by them. Again, the Court concurs. Defendants, as recounted above, had no role in Fritz's termination. She has failed to establish a *prima facie* case of age discrimination against them. *See Duffy v. Magic Paper Group, Inc.*, 265 F.3d 163, 167 (3d Cir. 2001) (in order to

---

and most competent to perform the services required." 43 Pa. Stat. Ann. § 955(a). The Court need not differentiate between Fritz's age discrimination claims under the ADEA and the PHRA because the same analysis is used for each claim. *See Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n.4 (3d Cir. 1998); *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 265 (3d Cir. 2021). Fritz's claims will be addressed together.

establish a *prima facie case* at the summary judgment stage, "the evidence must be sufficient to convince a reasonable factfinder to find all of the elements of [the] *prima facie* case." (internal citations and quotation marks omitted)).[11]

Assuming that Fritz carried the burden of establishing a *prima facie* case of age discrimination (which, she did not), the burden shifts to Defendants to "articulate some legitimate, nondiscriminatory reason" for its conduct.  *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802). As discussed in the previous section, Defendants easily carried that burden, submitting ample evidence that she was terminated by the County because (1) her behavior on August 7, 2018 violated the Workplace Violence Policy and the Code of Ethics and violated Article V, Sections 2 and 4 of the Sheriffs Policy Manual, (2) she was convicted of summary harassment, and (3) "allegations of racial discrimination made by several former County employees." (ECF No. 109-23, p. 3).  As such, the burden shifted back to Fritz to show that the County's explanation was pretextual, which she could do by providing evidence that would allow a factfinder to either (a) "disbelieve the employer's reason for the adverse employment action"; or (b) "believe that an invidious discriminatory reason was 'more likely than not a motivating or determinative cause' of the employer's action." *Fuentes*, 32 F.3d at 764.   Fritz

---

[11] Had Fritz satisfied this prong, the Court would have found she satisfied the fourth prong.  She was replaced by a 51-year-old woman. Although they are both members of the ADEA protected age group, 29 U.S.C § 631(a), their shared protected status does not immunize Defendants against an inference of age discrimination.  "[T]o satisfy the sufficiently younger standard, 'there is no particular age difference that must be shown, but ... courts have held ... that a five year difference can be sufficient [while] ... a one year difference cannot.'" *Monaco*, 359 F.3d at 307 (citation omitted).  The age difference here, twelve years, is sufficient for establishing a *prima facie* case. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996) (holding that when a 56-year-old employee was replaced by a 40-year-old employee, this qualified as someone "substantially younger" for the purposes of establishing a *prima facie* case); *Sempier*, 45 F.3d at 730 (holding when an employee was temporarily replaced by a person who was ten years younger and permanently replaced by a person four years younger, this was sufficient for the *prima facie* case).

presented no evidence to make either showing.  Her personal view that the County and Defendants were unfair to her and that Held should not have delegated his Section 1620 rights to the County does not suffice to show pretext.  *See Sarullo*, 352 F.3d at 800; *see also Uhl v. Zalk Josephs Fabricators, Inc.*, 121 F.3d 1133, 1137 (7th Cir. 1997) ("Facts, not an employee's perceptions and feelings, are required to support a discrimination claim.").  Fritz has produced no evidence of pretext other than the fact that she was replaced by a younger employee.  No reasonable factfinder could find that the County's offered reasons for terminating her were a pretext to discriminate against her on the basis of her age.

The Court holds that Defendants are entitled to summary judgment as a matter of law as to Counts III and VIII.

### C. Summary judgment will be entered in favor of the Sheriff's Office as to Fritz's claim under the EPA (Count IV).

In Count IV, Fritz alleges that the Sheriff's Office violated the EPA in that it did not equalize her compensation with other male County employees.  Summary judgment will be entered in favor of the Sheriff's Office as to this claim.

To establish a *prima facie* case under the EPA, a plaintiff must show that a defendant employer paid different wages to employees of the opposite sex for equal work on jobs which required equal skill, effort, and responsibility, and all of which are performed under similar working conditions.  *Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3d Cir. 2000).  A plaintiff must show that she was paid unequally for "substantially equal" work.  *E.E.O.C. v. Delaware Dep't of Health & Soc. Servs.*, 865 F.2d 1408, 1413-14 (3d Cir. 1989).  If a plaintiff is able to make a *prima facie case*, the burden shifts to the defendant to raise one of the four affirmative defenses stated in the EPA. The four affirmative defenses include three that are "specific and one general catchall." *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974).  A difference in

payment between opposite sexes is permissible if it is made pursuant to: (1) a seniority system, (2) a merit system, (3) a system which measures earnings by quantity or quality of production, or (4) a system based upon any other factor other than sex (the "catchall defense"). *Id.*

The Sheriff's Office argues that it was not Fritz's employer for purposes of the EPA particularly since it was not responsible for setting or changing Fritz's compensation. The EPA, as part of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201 *et seq.*, uses the same definition of "employer" as defined in the FLSA. 29 C.F.R. § 1620.8. 29 C.F.R. § 1620.8 instructs:

> The words "employer," "employee," and "employ" as used in the EPA are defined in the FLSA. Economic reality rather than technical concepts determines whether there is employment within the meaning of the EPA. The common law test based upon the power to control the manner of performance is not applicable to the determination of whether an employment relationship subject to the EPA exists. An "employer," as defined in section 3(d) of the FLSA, means "any person acting directly or indirectly in the interest of an employer in relation to an employee" and includes a "public agency," as defined in section 3(x). An "employee," as defined in section 3(e) of the FLSA, "means any individual employed by an employer." "Employ," as used in the EPA, is defined in section 3(g) of the FLSA to include "to suffer or permit to work."

Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency[.]" 29 U.S.C. § 203(d). The definition of employer under the EPA is exceedingly broad, and "[t]he Supreme Court has even gone so far as to acknowledge that the [act's] definition of an employer is 'the broadest definition that has ever been included in any one act.'" *In re Enterprise Rent-A-Car Wage & Hour Emp't Practices Litig.*, 683 F.3d 462, 467-68 (3d Cir. 2012) (quoting *United States v. Rosenwasser*, 323 U.S. 360, 363 n. 3 (1945)).

Under the EPA's definition of employer, an employee may have more than one employer—the term is not given a restrictive common law construction—rather courts are

"admonished to examine the economic realities presented by the facts of each case." *Hodgson v. Arnheim & Neely, Inc.*, 444 F.2d 609, 612 (3d Cir. 1971), *rev'd on other grounds*, 410 U.S. 512, 93 (1973) (citation omitted). "[W]here two or more employers exert significant control over the same employees—[whether] from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment—they constitute joint employers under the [EPA]." *Enterprise*, 683 F.3d at 468 (quoting *N.L.R.B. v. Browning-Ferris Indus. of Pennsylvania, Inc.*, 691 F.2d 1117, 1124 (3d Cir. 1982)) (internal quotations omitted). "Ultimate control is not necessarily required to find an employer-employee relationship," instead, the alleged employer need only exercise "significant control." *Enterprise*, 683 F.3d at 468 (quoting *Browning-Ferris*, 691 F.2d at 1124) (internal quotations omitted). Moreover, even indirect control may be sufficient under the EPA, if it is significant. *Enterprise*, 683 F.3d at 468 (citing *Browning-Ferris*, 691 F.2d at 1124).

In *Enterprise*, the Third Circuit established a non-exhaustive list of factors to determine whether a party is an employer: whether the alleged employer has "(1) authority to hire and fire employees; (2) authority to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; (3) day-to-day supervision, including employee discipline; and (4) control of employee records, including payroll, insurance, taxes, and the like." *Enterprise*, 683 F.3d at 469. The *Enterprise* court emphasized that while these factors are useful in determining whether a party is an employer, such a determination "must be based on a consideration of the total employment situation and the economic realities of the work relationship." *Id.*

Fritz had the initial burden of proving an employer-employee relationship existed with the Sheriff's Office. Based on the record before it, the Court is unable to determine who

promulgated Fritz's work rules, who set her conditions of employment, and who maintained employee records.  It knows that Fritz admitted that she was hired by "Westmoreland County" as a part-time deputy in the Sheriff's Office in November of 2010.  (ECF No. 89, p. 1); (ECF No. 105, p. 2).  On May 5, 2014, Held, pursuant to his statutory authority under 16 P.S. § 1203,[12] appointed Fritz to the position of Chief Deputy.  (ECF No. 89, p. 2); (ECF No. 105, pp. 2, 19); (ECF No. 112, p. 1).  Fritz also claims she was "employed" by the "Westmoreland County Sheriff's Office from 2010 through October 25, 2018."  (ECF No. 105, p. 18); (ECF No. 112, p. 1).  As Chief Deputy, she served at the pleasure of the Sheriff.  (ECF No. 105, p. 19); (ECF No. 112, p. 1).  Held turned the investigation into the August 7, 2018, incident between Fritz and Felder over to the County's HR Department.  (ECF No. 89, p. 6); (ECF No. 105, p. 12).  And, sometime during or at the end of the investigation, he delegated his rights under 16 P.S. § 1620[13]

_____

[12] 16 P.S. § 1203 states in pertinent part:

> **(a) Appointment** - The sheriff of each county shall appoint, by commission duly recorded in the office for recording deeds, a chief deputy whose appointment shall be revocable by the sheriff on recording in the office for recording deeds a signed revocation. The chief deputy, during continuance in office, shall have full power and authority to perform any duty incumbent upon the sheriff, with like effect in law as if such official act had been done by the sheriff in person, regardless of the ability or temporary disability of the sheriff to act, while the sheriff continues in office.

16 P.S. § 1203(a).

[13] 16 P.S. § 1620 provides in pertinent part:

> Provided, however, that with respect to representation proceedings before the Pennsylvania Labor Relations Board or collective bargaining negotiations involving any or all employees paid from the county treasury, the board of county commissioners shall have the sole power and responsibility to represent judges of the court of common pleas, the county and all elected or appointed county officers having any employment powers over the affected employees. *The exercise of such responsibilities by the county commissioners shall in no way affect the hiring, discharging and supervising rights and obligations with respect to such employees as may be vested in the judges or other county officers.*

EPA because Fritz has not met her initial burden of proving the Sheriff's Office was her employer, or joint employer.

Even if Fritz had established that the Sheriff's Office was her employer, or joint employer, she failed to establish a *prima facie* case. She has not come forth with adequate evidence demonstrating that "employees of the opposite sex were paid differently for performing 'equal work'—work of substantially equal skill, effort and responsibility, under similar working conditions." *Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3d Cir. 2000). To determine whether two jobs involve equal work, a court must determine whether "a significant portion of the two jobs is identical." *Brobst v. Columbus Servs. Int'l*, 761 F.2d 148, 155, 156 (3d Cir. 1985).

Fritz's salary was set at the same rate as her predecessor. Nevertheless, she argues that the male Commissioners' Chiefs, Prison Wardens, and Park Police Chief Deputy are appropriate comparators. Fritz's comparator evidence, as previously explained, is woefully deficient. Insufficient facts were adduced that these other positions were equivalent to hers. The positions are in different County departments, with vastly different job responsibilities and supervisors. She failed to adduce evidence that the men had a common core of tasks equivalent to her tasks. Fritz has failed to present any evidence that the work done by these men was of a "substantially equal skill, effort and responsibility, under similar working conditions." *Stanziale*, 200 F.3d at 107. She has not set forth a *prima facie* case that the Sheriff's Office paid her differently from male coworkers in other County departments for performing equal work.

For these reasons, summary judgment will be entered in favor of the Sheriff's Office as to Count IV.

**D. Summary judgment will be entered in favor of the Sheriff's Office (Counts II, V and VIII) and Held (Count VIII) as to Fritz's claims of retaliation.**

In Count II, Fritz brings a retaliation claim against the Sheriff's Office under Title VII for engaging in protected conduct by filing an EEOC complaint (which was later amended) as well as a complaint with the County Solicitor regarding her February 7, 2018, incident with Regoli. She also claims she "engaged in protected activity by addressing the disparity in pay with her male peers." (ECF No. 26, p. 19). As a result of engaging in this allegedly protected activity, Fritz contends she was subjected to retaliatory behavior by the Sheriff's Office including, but not limited to, discipline and termination. (*Id.* at p. 20). In Count V, she brings a retaliation claim against the Sheriff's Office under the EPA because, after voicing her concerns regarding her disparity in pay with other Chief Deputies in the County, "Defendants not only denied the equal compensation but undertook a pattern and practice aimed at compelling her discharge from employment." (*Id.* at p. 25). Lastly, in Count VIII, she brings a retaliation claim under the PHRA against the Sheriff's Office and Held alleging that they engaged in "employment decisions" "that were discriminatory in intent and practice by treating her differently in the terms and conditions of her employment compared to male employees," and retaliated against her through "compensation, threats of physical violence, unfounded and disparate disciplinary conduct, and termination of employment." (*Id.* at p. 35). In her pleadings to the Court, she clarifies that her claims under these provisions are for Defendants "retaliating in response to [her] complaints of discrimination as to compensation, personnel action, and disciplinary action."[14] (ECF No. 104, p. 31). She made complaints of discrimination both internally with

---

[14] Section 704(a) of Title VII forbids an employer from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an

Sheriff Held and Human Resources and externally with the EEOC and PHRC.  Fritz argues that the adverse employment action was her suspension and termination.  (*Id.* at pp. 32-34).

In order to establish a *prima facie* case of retaliation,[15] Fritz must show that (1) she was engaged in protected activity; (2) her employer took adverse employment action against her; and (3) a causal nexis exists between the protected activity and the adverse employment action. *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 501 (3d Cir. 1991).  If Fritz is able to show these elements, the burden shifts to Defendants to articulate a legitimate, non-discriminatory reason for its action.  *See Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 187 (3d Cir. 2003).  If Defendants satisfy this burden, Fritz may defeat summary judgment by discrediting the proffered reason or adducing evidence to demonstrate that retaliatory animus was a motivating factor in Defendant's decision.  *Fuentes*, 32 F.3d at 765.

Defendants submit that Fritz cannot prove they (1) took adverse employment action against her, and (2) that a causal connection exits between such action and her protected activity. (ECF No. 88, p. 22).  Even viewing the evidence in a light most favorable to Fritz, the Court agrees with Defendants that it is insufficient to overcome their motion for summary judgment. Like her other claims, Fritz's retaliation claim fails at the outset because neither the Sheriff's Office nor Held took any adverse employment action against her.  As discussed repeatedly in the

---

investigation ... under this subchapter." 42 U.S.C. § 2000e–3(a). It is similarly unlawful under § 5(d) of the PHRA for an employer "to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge ... under this act." 43 P.S. § 955(d).  Under the FLSA, it is prohibited to retaliate against any employee who files a complaint, commences a proceeding, or testifies in a proceeding under the FLSA, including the EPA. 29 U.S.C. § 215(a)(3).

[15] Retaliation claims under Title VII, the PHRA, and the EPA are all analyzed using the same framework.  *Fogleman v. Mercy Hosp. Inc.*, 283 F.3d 561, 567 (3d Cir. 2002); *see also Preobrazhenskaya v. Mercy Hall Infirmary*, 71 F. App'x 936, 939 (3d Cir. 2003) (citing *Kachmar v. Sungard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997)).

previous sections, Fritz's salary was determined by the County, and she was terminated by the County against Held's wishes. Thus, she cannot meet the second prong of the *prima facie* test as it relates to these Defendants.[16]

Even if she had, Fritz has failed to demonstrate the *prima facie* element of causation. A plaintiff may show causation in any of the following three manners: (1) by the timing of the adverse action in relation to the protected activity; (2) by a *pattern of animus* during the interval between the protected activity and the adverse action; or (3) through other circumstantial evidence concerning the employer's motivation, including inconsistent reasons given by the employer for terminating the employee or the employer's treatment of other employees. *Theriault v. Dollar Gen.*, 336 F. App'x 172, 175 (3d Cir. 2009). Thus, in proving a causal link between protected activity and adverse action, plaintiffs may rely on "a broad array of evidence." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 284 (3d Cir. 2000).

"[I]t is causation, not temporal proximity itself, that is an element of [a] plaintiff's *prima facie* case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn. The element of causation, which necessarily involves an inquiry into the motives of an employer, is highly context-specific." *Kachmar*, 109 F.3d at 178. Determining whether temporal proximity alone may create an inference of retaliation is "essentially fact-based ... depending ... on how proximate the events actually were, and the context in which the issue came before us." *Farrell*, 206 F.3d at 279.

---

[16] The Court agrees with Defendants that Fritz's entire position–that Defendants took adverse employment action against her–is completely undermined by her statements in her Motion for Reconsideration of the Court's June 29, 2020 Order Dismissing Count VII of Plaintiff's Amended Complaint (ECF No. 93). Therein, she admits that Held took no disciplinary action against her and his power was "usurped" by the County who took matters into its own hands after the August 7, 2018 incident with Held, undermined him, and banned her from County property and accessing County property electronically. (*Id.* at p. 10)

Fritz made an internal complaint on February 7, 2018, after an incident with Regoli wherein she alleged he physically assaulted her and his conduct violated the County's Workplace Violence Policy. That same month, she filed external complaints–an EEOC complaint on February 21, 2018, against the three Commissioners and Regoli as well as a complaint with the Pennsylvania Office of Disciplinary Counsel against Regoli. Her complaints were based on the February 7, 2018, incident with Regoli. On February 21, 2018, she filed a complaint with PHRC against all three Commissioners and Regoli. In March 2018, she amended her EEOC complaint to include a claim of unequal pay based on gender discrimination. In June 2018, Fritz supplemented her EEOC charge to include claims of sex discrimination and equal pay. Then, almost six months later, Fritz was suspended with pay on August 10, 2018, after the August 7, 2018, incident with Felder while the County conducted its independent investigation of the incident. Fritz amended her EEOC charge on August 16, 2018, to include sex and age discrimination and retaliation. On October 25, 2018, the County terminated her employment after concluding its investigation into the events of August 7, 2018, and learning of her October 2, 2018, criminal conviction. The Court finds that this timing is not in and of itself unduly suggestive of retaliation in the particular factual circumstances of this case. *See McLaughlin v. Fisher*, 277 F. App'x 207, 218 (3d Cir. 2008) (timing alone "ordinarily is insufficient to demonstrate a causal link unless the timing is 'unusually suggestive' of retaliatory motive." (citation and quotation omitted)).

Since the temporal proximity is not so close as to be unduly suggestive, the Court must look to other types of circumstantial evidence that may give rise to the inference of causation. The record is devoid of any evidence of a pattern of animus by Defendants during the interval between Fritz filing her complaints and being terminated. The only evidence she has adduced is

that the Commissioners, in a February 9, 2018 letter, prior to Fritz filing her external complaints, requested Held suspend Fritz due to the discrimination complaints on the basis that the County's Non-Discrimination Policy stated that employees who allegedly conducted themselves in a discriminatory manner were to be "indefinitely suspended pending the outcome of the investigation." Held refused to suspend Fritz. (ECF No. 89, p. 4); (ECF No. 105, pp. 8, 26); (ECF No. 112, pp, 4-5). Then, on March 27, 2018, the Commissioners wrote to Pennsylvania senators and requested Fritz's removal from office based on the discrimination complaints against her. (ECF No. 105, p. 27; ECF No. 112, p. 5). Neither of these events demonstrate any animus on the part of Held or the Sheriff's Office for Fritz filing EEOC and PHRC complaints the prior month.

The Court has carefully reviewed Fritz's EEOC and PHRC complaints and their amendments (ECF Nos. 109-7, 109-12, 109-15, 109-16, and 109-18), and nothing therein suggests any inappropriate behavior or actions on the part of Held or the Sheriff's Office. The record is clear that Held opposed Fritz's suspension after August 24, 2018, when he tried to lift her suspension. Then, when HR sent Held a letter dated October 15, 2018, that noted that it was the County's intention to terminate Fritz's employment and asked Held sign the personnel action form terminating her employment, he refused to sign. The record does not support Fritz's bald allegation in her brief that "[b]etween February and October 2018, Sheriff Held witnessed the harassment and antagonism to which Chief Fritz was subjected, but he did nothing to address it, not event with respect to his own employees." (ECF No. 104, p. 34). Fritz has not produced any evidence that connects the dots between her complaints, her suspension, and her termination as it relates to the Sheriff's Office and Held. *See Christman v. Cigas Machine Shop, Inc.*, 293 F. Supp. 2d 538, 544 (E.D. Pa. 2003) ("A plaintiff must produce at least some evidence that

connects the dots between her claim for workers' compensation and her termination, such as adverse personnel action promptly after her workers' compensation claim was made, statements by supervisors referencing her claim, documents from the employer discussing her claim with respect to her termination, etc." (quoting *Landmesser v. United Air Lines*, 102 F. Supp. 2d 272, 278 (E.D. Pa. 2000)).

Even if Fritz had put forth sufficient evidence of a causal connection between her complaints and her termination, Defendants are entitled to summary judgment because they came forth with legitimate, non-discriminatory reasons for why the County terminated Fritz (i.e., (1) her behavior on August 7, 2018 violated the Workplace Violence Policy and the Code of Ethics and violated Article V, Sections 2 and 4 of the Sheriffs Policy Manual, (2) she was convicted of summary harassment, and (3) "allegations of racial discrimination made by several former County employees." (ECF No. 109-23, p. 3)) that she has not shown are pretextual. As outlined in the previous sections and incorporated herein, there is no genuine dispute of material fact as to whether the County's reasons for suspending and then terminating Fritz's employment were pretextual. Fritz has failed to present evidence from which a reasonable fact finder could conclude that the County's legitimate, nondiscriminatory reasons for termination of Fritz were a pretext for retaliation by these Defendants.

The Court holds that Defendants are entitled to summary judgment as a matter of law as to Fritz's claims of retaliation against them.

33

## IV. CONCLUSION

For the foregoing reasons of law and fact, the Court will grant Defendants' motion and

enter summary judgment in their favor.  Orders of Court will follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

September 26, 2022
Date

34